# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | **Cause No. 3:23-CR-95-BJB** |
| | ) |
| **LISA SMITH** | ) |
| | ) |
| **Defendant,** | ) |

## <u>SENTENCING MEMORANDUM</u>

Comes now, the Defendant, Lisa Smith, by counsel, Dax R. Womack, and tenders her Sentencing Memorandum, to wit:

Smith entered a knowing, voluntary and intelligible "*open*" plea to a single-count of-Conspiracy to Tamper with a Witness, a violation of 18 USC§1512(b) and (k) on or about July 10, 2024.

The offense for which Smith plead "*guilty*" has no mandatory minimum sentence. The punishment range of imprisonment is no more than 20-years in prison and no more than 3-years Supervised release, and a $250,000.00 fine.

## **RELEVANT FACTS**

Smith was arrested on the instant offense on or about February 16, 2024 and has remained in custody at the Oldham County Detention Center since her arrest.

On or about February 13, 2024, in the Western District of Kentucky, Jefferson County, Smith received a phone call from her co-conspirator/drug dealer, Kendall Shaw.  Shaw was incarcerated for his involvement in a large federal drug conspiracy.  There is **no** evidence Lisa Smith engaged in said drug conspiracy.

Shaw identified who he believed was a CI (Confidential Informant) to both Smith and Thompson on the phone call.  Shaw provided Smith with the CI's phone number and directed Smith to contact the CI on a 3-way phone call.  Shaw, and to a lesser extent Smith/Thompson told and/or encouraged the CI to not show up to Court against Shaw.  On the first call, Shaw confronted the CI while Smith and Thompson basically listened.  A second call was placed between Shaw and Smith/Thompson.  In the second call, Smith/Thompson alluded to "*outsourcing*" Shaw's threat to the CI to an unindicted 4th party.  This threat to the CI never materialized and never went beyond "*talk*".

## **PERSONAL AND FAMILY DATA**

Lisa Ann Smith (Clemente) was born in Louisville, Kentucky, on June 15, 1989, to the marital union of Anthony "Tony" Clemente and Lisa "Robin" Clemente.  She has a full brother, Anthony "Joey" Clemente and a half-sister, Alyssa Trussell.  Alyssa is the defendant's only living family member and resides in Jeffersonville, Indiana.  Her father died of a drug overdose in 2014 and her mother died on October 6, 2016, of what Smith believes was murder.  Smith's brother was murdered on August 3, 2016.

The defendant indicated she and her brother were raised primarily by their mother as their father was in and out of prison the majority of her life.  Defendant stated every time her father would come home from prison, she would have to pick up the pieces of her mother and little brother.  Her mother's drug addiction impacted her childhood greatly but at the same time she knew her mother gave her the best parts of her.  Defendant stated that her mother's drug addiction had Smith playing the role of mother/babysitter/sister at the age of 8-years old.   This led Smith to be rebellious because she thought she was already grown.  Smith started skipping school at 12-years of age and was sent to Indianapolis Girls School for 90-days.  Upon her release, she was sent to live with her grandmother

until her untimely death.  Smith grew up in Louisville's housing projects as their mother was unable to work because of a rare blood disease.

While poor, Smith indicated all of their basic needs were met and that she never experienced any type of abuse.  However, due to her parents' struggles with substance abuse, Smith was often left to care for herself and took on the responsibility of caring for her younger brother as well.  Smith recalls throwing away needles and crack pipes as a child and witnessed her parents get high on numerous occasions.  Smith indicates her brother was also a drug addict.  Smith reported her grandmother was a strong maternal figure in her life with whom she resided beginning at the age of 15, until she passed in 2005.

Smith married Rickey Smith, age 39, in 2009.  They have two children together, Rickey Smith III, age 14, who lives with his adopted family in North Carolina, and Arianna Smith, who was tragically murdered on February 13, 2021, at the age of 12. Lisa's daughter was in foster care at the time of her death.  Smith indicated her husband has been in and out of prison since they got married and she intends to divorce him once she is released from custody.

At the time of Smith's arrest on the instant offense, she was living with a friend at a sober living facility.  Upon her release from custody, Smith

4

would like to live with her lifelong friend, Kristen Thomas, in Dorchester, Massachusetts, or at the Women's Healing Place in Louisville, Kentucky. Thomas verified Smith's information and has indicated she resides at 5 Ruthven, Dorchester, Massachusetts, in a three-bedroom apartment. While Thomas indicated she does not have space for Smith at her apartment, she would be willing to rent Smith a room elsewhere until Smith is able to get her own place to live.

Ms. Smith is 5'5" and weighs 165 pounds. She has hazel eyes and brown hair. She denied having any scars or birthmarks but reported having the following tattoos: "Robin" on her right wrist, "Norma" on her left wrist, a scroll with "Perfect wife, mom and lover" on her left forearm, and a heart with "Joey" and his birth and death dates and "Sunshine" on her right bicep. She denied having any chronic medical conditions, is not currently taking any medication, and was not under a doctor's care at the time of her arrest. She also denied having any allergies to food or medication.

Smith advised she was diagnosed with post-traumatic stress disorder (PTSD) at an unknown facility in 2017 or 2018. The same doctor admitted her into Our Lady of Peace (OLOP), in Louisville, Kentucky, for approximately a week following her daughter's death in 2021. Following her release from OLOP, Smith went to the Women's Healing Place. She

reported feelings of depression due to the tremendous losses she has suffered over the last decade.  Smith indicated she would like to participate in a co-occurring disorder treatment program where she can get help for both her mental health and substance abuse issues.

The defendant has an extensive substance abuse history consisting of alcohol, marijuana, cocaine, methamphetamine, heroin, prescription opiate and benzodiazepine abuse.  Lisa began drinking alcohol at the age of 12 and last drank on the date of her arrest in this case.  Smith indicated she does not typically drink alcohol but had gotten drunk several days in a row leading up to her arrest due to it being the anniversary of her daughter's death. It should be noted the defendant has numerous convictions for driving while intoxicated.  Smith first smoked marijuana when she was 12 years old and last used it in 2022.  Lisa indicated she was a daily marijuana user until 2016, when her marijuana use decreased to weekly.  Lisa used cocaine on weekends with her last use being in 2016.   Lisa began using methamphetamine in 2019 and was using the drug daily until her arrest in the instant offense.

In 2010, she reported being prescribed prescription opiates following a Cesarean section, and stated she quickly became dependent on them.  Her substance abuse escalated in 2018 when she switched to heroin.

6

At the height of her opiate abuse, Lisa indicated she snorted "two lines" per day until her arrest.

Lisa has been in and out of a number of treatment programs. She indicated she completed an intensive outpatient treatment in 2014. She last attended treatment in 2023 at a residential treatment center called The Break Away, in New Albany, Indiana. She indicated she was in the program for 90-days before being unsuccessfully discharged based on their suspicion she was romantically involved with another resident, a claim she denies. The defendant would like to re-enroll in this program or the Women's Health Place upon her release from custody.

Smith does not have a high school diploma or GED. Records indicate the defendant last attended Iroquois High School in Louisville, Kentucky, as a freshman. Smith is currently participating in a GED program at the Oldham County Detention Center, in LaGrange, Kentucky, and stated she expected she would be able to take her GED test soon. Smith further advised she previously obtained her license to be a certified nursing assistant (CAN); however, she is unsure if her license has expired. Upon her release from custody, Smith indicated she would like to attend college.

Smith requests she be released on the conditions set forth under the proposed special conditions of supervision and would agree to comply with

all of her conditions; Smith has been in custody almost 10-months on the underlying offense---a sufficient deterrent relative to her conduct.

**I.      A sentence of 110-137 months imprisonment is greater than necessary to achieve the purposes of sentencing under Title 18 U.S.C. §3553(a).**

When sentencing a defendant, a district court is bound to follow the dictates of 18 U.S.C. § 3553(a) to impose a sentence sufficient, *but not greater than necessary, to achieve the four purposes of sentencing set forth in Section 3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.  United States v. Dean, 414 F. 3d 725, 728 (7th Cir. 2005).*  The Supreme Court has held that even a sentence within the guideline range may not be presumed reasonable by the sentencing court. Rita v. United States, 127 S. Ct. 2456, 2463 (2007).

In Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) and Gall v. United States, 128 S. Ct. 586, 597 n. 6 (2007), the Supreme Court emphasized that federal district judges have significant discretion to impose sentences below (or above) those called for under the Federal Sentencing Guidelines.  See Id.  In exercising its discretion and authority, Clark asks that this Court consider the following mitigating factors under 18 U.S.C. §3553.  See also Koons v. United States, No. 17-5716 (2017) and Hughes v. United States, 17-155 (2017).

## **THE OFFENSE CONDUCT**

While incarcerated, Shaw identified a cooperating source, (hereinafter CI), used by the government in its underlying drug conspiracy case against him. Armed with the CI's phone number, Shaw began to make phone calls to Lisa Smith and Ashley Thompson from his jail cell on another inmate's account. These calls occurred on or about February 13, 2024 through February 15, 2024.

In summation, during these calls, Shaw directed Smith and Thompson to contact "Amy" and essentially convince her to not show up to court should Shaw elect to go to trial. At Shaw's direction, while heavily under the influence of meth/heroin, Smith made a three-way-call to the number Shaw provided her. During the call, **Shaw** told Amy, "*do not come to court on me*".

A second call was placed by Shaw to Smith on the same day. Shaw directed Smith to "*hey, listen, I need you to make sure she don't, she might call them people's on me too though*".

Smith replied, "*yea, that's what I was thinking I am about ready to hit up my homeboy and have him check her*".

Shaw then told Smith "*that's the thing about it, if she doesn't come to court they ain't got no case. They gotta release me*".

Smith's reply was "*right, she ain't coming*".

Later during the call, a conversation can be heard between Smith, Thompson and Shaw discussing an unindicted fourth party who goes by the name of "*Mookie*" as being someone who could theoretically persuade Amy to not appear in court.  Smith and Thompson were later arrested on February 16, 2024 while Smith was seeing her probation officer.

Smith plead "*guilty*" to Conspiracy to Tamper with a Witness, a violation of 18 USC§1512 and has admitted the essential elements of her offense.  Smith has spared the government the expense/resources of preparing for trial.

## OFFENSE LEVEL COMPUTATION

This is a Title 21 offense and there is no identifiable victim.

## ADJUSTMENT FOR OBSTRUCTION OF JUSTICE

There is no information indicating the defendant impeded or obstructed justice.  The government's case against Shaw and his co-conspirators has already resulted in their arrests and incarceration months before Shaw placed his phone call to Smith.  As such, there is no evidence Smith impeded the government's investigation of Shaw/co-conspirators.

## ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY

Smith readily admitted her guilt in open court.  Smith timely provided information concerning her own involvement and notified authorities in a timely manner of her intention to plead guilty; thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.  Smith was interviewed by the probation office with her attorney present and accepted responsibility.  Therefore, Smith appears to merit the reduction for Acceptance of Responsibility pursuant to Section 3E1.1(a) and (b).

### A.  Count 1-Conspiracy to Tamper with a Witness

According to Smith's PSR, the guideline for a violation of 18 USC§1512 is USSG§2J1.2 (Paragraph 13 of PSR).  Pursuant to USSG§1512.2(c)(1), if the offense involved the obstruction of an investigation in the prosecution in a criminal offense, apply §2X3.1 (Accessory After the Fact) with respect to that criminal offense, if the resulting offense is greater than determined above.

According to Smith's PSR, pursuant to USSG§2X3.1(a), the base offense level is six (6) levels lower than the offense level for the underling offense, except as provided in subdivisions (2) and (3).  The underlying

offense in this case is the Distribution of Methamphetamine, a violation of 21 USC§841(a)(1), which is covered under USSG§2D1.1.

According to the United States and Federal Probation, the base offense level under USSG§2D1.1 (Shaw and his drug co-conspirators) is a level 34-because the drug conspiracy involved between 500 grams and 1.5 kilograms of actual methamphetamine.  Specifically, according to the United States and Federal Probation, Shaw's underlying drug case involved is 925.48 grams of actual methamphetamine.  For the record, Smith, nor her counsel can verify/stipulate to the government's calculation because the government has never relinquished any evidence regarding Shaw's drug conduct to Smith.

As a punitive and inequitable consequence, the government has determined Smith's base offense level as 28 (i.e 34-6; Paragraph 13 of Defendant's PSR).  Assuming Smith receives the standard 2-level reduction, for her acceptance of responsibility and a 1-level reduction for her timely plea, the government believes Smith's total offense level to be 25.

This determination is overstated, over-inflated, unfair and inequitable relative to Smith's actual conduct and limited involvement in her "*crime*".  The government's offense level calculation of 25 coupled with Smith's criminal history category of VI suggests a range of 110-137 months!

Again, a sentence of that magnitude given the facts of this case would be unjust.

The government's proposed sentence is largely driven by over inflating Smith's criminal culpability for Shaw's crimes. Smith merely provided Shaw a means to threaten a CI in his case.

Smith's federal circumstances are unique. During the last five fiscal years (2019-2023), the "JSIN" data shows an entire federal population with only one-other defendant whose primary guideline was §2X3.1 with a final offense level of 25 and a criminal history category of 6. Further, only 2 similarly situated defendants received a sentence of imprisonment in whole or in part.

Simply because the government can create/fashion a legal construct to support a given guideline range, the court has the discretion to perform a critical analysis of the facts of Smith's culpability/conduct before endorsing/accepting the government's unduly harsh sentence.

First there is no evidence to support Smith engaged in conduct that hurt or damaged the U.S. Government's case against Kendall Shaw and his co-conspirators in their drug investigation. Each and every drug co-conspirator was already in jail and/or had been arrested prior to Smith's phone call(s) from Shaw. Further, the government had already acquired an

indictment against Shaw and his drug co-conspirators.   As such, the investigation of Shaw was over, and in no way did Smith impede or obstruct the government's "investigation" into Shaw.

Second, Smith received two (2) phone calls from Shaw whereby **<u>Shaw</u>** threatened an informant.  Other than Smith suggesting to Shaw she would encourage (through a different party) the CI to not appear in Court, Smith made no direct threats to the confidential source.

Third, there is no evidence to support Smith had the ability/ capacity to act on any threat made by Shaw to the confidential source. Smith was homeless.  Smith had no vehicle.  Smith has no weapons. Smith was high on methamphetamine/heroin and was literally checking herself into rehab the day of her arrest.  Smith was, in fact, never going to confront Amy. Smith was merely beholden to the siren call of her drug dealer Shaw.  When Shaw called Smith, Smith merely made it possible for Shaw to threaten a CI---in his case.

For this Court to impose the proposed "guideline" sentence to Smith because of Shaw's threat to a CI in his case, would be completely inequitable and unjust.  To apply Shaw's criminal drug conduct to Smith, when she, in fact, had no involvement with Shaw's drug conspiracy---is akin to subjecting a defendant to a punishment that has a mandatory minimum

sentence (i.e Conspiracy to Distribute Methamphetamine) without any evidence of Smith's involvement in the underlying crime of Shaw's. Simply because the government can articulate a means by which Smith could receive an outrageous sentence relative to her criminal conduct/involvement, it does not require this court to act unjustly. This honorable Court should view Smith's conduct within the confines of the evidence of this case. Here, the government wants Smith to receive more than the actual participants of the drug conspiracy (i.e. 9-11 years). This range of punishment is clearly punitive and would lack any semblance of justice.

A review of the Sentencing Commissions annotations of USSG§2X3.1, provide clear intent to limit a respective defendant's criminal exposure based upon another party's "*underlying offense*." Under USSG§2X3.1(3)(a), the regulation states "*the base offense under this guideline shall not be more than a level 30.*" Yet, the government wants Smith's guideline to be based on Shaw's criminal offense level of 34 (Paragraph 13 of PSR). It is from the government's attempt to apply Shaw's bloated offense level of 34 to Smith that it wants Smith to receive a draconian sentence of 9-11 years in prison---because of Shaw's threat to a CI in his criminal case!

Under the commentary section of the relevant sentencing guideline provisions, it states:

> *for the purpose of this guideline, "underlying offense" means the offense as to which the defendant is convicted of being an accessory, or in the case of a violation of 18USC§2339(a), "underlying offense" means the offense the defendant is convicted of having <u>materially supported after its commission</u> (i.e. in connection with the conformant or escape from that offense, or in the case of a violation of 18USC§2339(c)(2)(A), "underlying offense" means a violation of 18USC§2339(b), with respect to which material support or resources were concealed or disguised. Apply a base offense level plus any applicable specific offense characteristics that were known or reasonably should have been known, by the defendant".*

Here, there is no evidence to support the notion Smith "*materially supported the defendants or their conduct*" in the underlying offense. Smith did not transfer/sell drugs. Smith did not buy drugs. Smith did not conceal/transport or sell drugs. Further, Smith did not "*materially*" support or provide resources to conceal or disguise the "*underlying offense*." The drug conspirators had already been arrested and been in jail for months on their "*underlying offense*" conduct. Further, Smith did not conceal or disguise anything that was not already known to the U.S. Government.

Finally, the United States cannot reasonably allege nor does the evidence support the proposition that Smith, when unexpectedly called by Shaw from jail, reasonably should have known the offense characteristics of Shaw and his drug-dealing co-conspirators. Smith was first contacted by Shaw several months after his incarceration. As of the date of this

16

memorandum, Smith nor her attorney have ever received any information/discovery about Shaw and his underlying co-defendants drug activity. In other words, Smith still doesn't know anything about Shaw's drug-dealing activities. Smith merely knows Shaw believed he knew the identity of a confidential source. Smith facilitated a phone call for Shaw to the CI, so Shaw could encourage/threaten the CI to not appear in court. Smith's punishment should be commensurate with that conduct, nothing more.

### B. Mitigating Role

At a minimum, Smith would ask the court to consider applying §3D1.2 of the sentencing guidelines to her whereby she could receive the benefit of, at least, a mitigating role reduction under §3D1.2(a) and (b).

If given full credit for a mitigating role reduction under §3D1.2, Smith's base offense level could be reduced to a level 18. Given Smith's criminal history category 6, this would put her in a criminal history category of 57-71 months. This too would be punitive, but not as punitive as the government's outlandish request of more than a decade in prison, (See JSIN data on comparable defendants).

Alternatively, Smith requests she receive a judgment of time served. If received, Smith could complete her state court

probation/supervision in #22-CR-430. This sentence would be commensurate with the two (2) defendants listed in the (JSIN) data contained with defendants PSR, Paragraph 78. In no circumstance, should Smith receive a sentence of more than 57-months, if that. Again, a sentence of 57-months would largely be driven by Smith's criminal history and not her involvement in the underlying criminal case.

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant.**

Smith's offense involves, at the direction of Shaw, contacting a purported CI in Shaw's conspiracy drug case and encouraging the CI to not appear in Court.

      **the need for the sentence imposed—**

**(A)**     **to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

**(B)**     **to afford adequate deterrence to criminal conduct;**

**(C)**     **to protect the public from further crimes of the defendant; and**

**(D)**     **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Smith's offense has no mandatory minimum sentence. A sentence of time served would provide just punishment, afford adequate deterrence, and

protect from further crimes.  Further, Smith is fully capable of being productive member of society, as she held various jobs during the course of her adult life.  Further, the cost of incarcerating Smith would prevent her from being a tax-paying, productive citizen.  Smith should receive no greater punishment than any of her alleged co-conspirators.  Smith has been incarcerated since her arrest in February 2024.  There is no rational basis for the U.S. to claim/allege Smith was anything other than a "facilitator" to Shaw's criminal conduct.  Smith was a long-time heroin/methamphetamine addict at the time of her arrest and Shaw was her supplier.

**(3)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

Only two (2) known federal defendants (similarly situated to Smith) exist in the JSIN data.  Both received a sentence with little to no incarceration for their conduct.  Smith has already served approximately ten (10) moths—for a couple of phone calls.  Smith still has an unexpired sentence in Kentucky State Court under Case No:  22-CR-430.  Smith requests she be released from federal custody and complete her #22-CR-430 sentence and/or run her federal sentence "concurrent" with #22-CR-430 (4G1.3 and 7B1).

## **CONCLUSION**

In sum, Lisa Smith, requests this Honorable Court take into consideration each of the above factors in determining the appropriate sentence to impose.   Because the sentence set forth in the guideline range is greater than that necessary to achieve the goals of sentencing under §3553(a), Smith requests this Court exercise its discretion and authority under Booker Id., Gall Id., and Kimbrough Id., to impose a sentence that permits her to be released, return to society and become a productive member of society.  Alternatively, a sentence of time-served and/or release to Federal supervision (i.e 3-years) is in accordance with the mandate(s) of §3553 (a).

___/s/Dax R. Womack_____
**WOMACK LAW OFFICE, LLC**
304 First Street
P.O. Box 637
Henderson, Kentucky 42419-0637
(270) 826-5040
Attorney for Defendant,
Lisa Smith

# CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024 a copy of the foregoing Motion was filed electronically with the Clerk of the Court. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

**William Hartman Brammell , Jr**
Bill@WickerBrammell.com,dianne@wickerbrammell.com,2755260420@filings.docketbird.com,dana@wickerbrammell.com,kayla@wickerbrammell.com
- **Bryce L. Caldwell**
brycecaldwell33@gmail.com
- **Scott C. Cox**
CoxECF@aol.com
- **Scott Coleman Cox , II**
ccox@600mainlaw.com
- **Frank E. Dahl , III**
frank.dahl@usdoj.gov,usakyw.vwu@usdoj.gov,charlotte.hendricks@usdoj.gov,CaseView.ECF@usdoj.gov,usakyw.ecfcriminal@usdoj.gov,usakyw.assetfor@usdoj.gov
- **Matthew Jess Farra**
matt@farralaw.com
- **Kevin M. Glogower**
kmglogower@aol.com
- **Kevin L. Goff**
kevin@gofflaw.us,notices@UpRightLaw.com
- **Michael L. Goodwin**
michaellgoodwin@me.com
- **Jonathan M. Hodge**
jhodge@hsplawpartners.com
- **Travis B. Lock**
tlock@tlocklaw.com
- **Dawn L. McCauley**
lebanonlawyer@cs.com
- **Ramon McGee**
rmcgeeinc@hotmail.com
- **C. Fred Partin**
fredpartin@bellsouth.net
- **Joshua Ryan Porter**
joshua.porter@usdoj.gov,Dejhanea.Blanks@usdoj.gov,Kara.Slone@usdoj.gov,usakyw.vwu@usdoj.gov,CaseView.ECF@usdoj.gov,usakyw.ecfcriminal@usdoj.gov,usakyw.assetfor@usdoj.gov

I hereby certify that on October 9, 2024 a copy of the foregoing Motion was mailed, by first-class U.S. Mail, postage prepaid and addressed to the following:

None

_____/s/Dax R. Womack_____

**WOMACK LAW OFFICE, LLC**

304 First Street

P.O. Box 637

Henderson, Kentucky 42419-0637

(270) 826-5040

Info@womacklawofficellc.com